Donald E. ROBINSON, Petitioner,

v.

PICKANDS MATHER & COMPANY/LESLIE COAL COMPANY; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 90–1003.

United States Court of Appeals,
Fourth Circuit.

Argued July 17, 1990.

Decided Sept. 12, 1990.

Roger Daniel Forman, Forman, Kanner and Crane, Charleston, W.Va., for petitioner.

Mark Elliott Solomons, Arter & Hadden, Washington, D.C., Jeffrey Steven Goldberg, U.S. Dept. of Labor, Washington, D.C., for respondents.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

ERVIN, Chief Judge:

In this case, the claimant, Donald E. Robinson, contends that the Administrative Law Judge ("ALJ") and the Benefits Review Board ("BRB" or the "Board") erred in disallowing his claim for benefits. Specifically, Robinson contests the ALJ's application of *Wilburn v. Director, OWCP,* 11 Black Lung Reporter (MB) 1–135 (BRB 1988), to require the claimant to prove that the disability was "in and of itself" totally disabling. As all parties agree and as the BRB has since held in *Scott v. Mason Coal Co.,* BRB No. 88–1838 BLA (BRB June 22, 1990), this is the incorrect legal standard. We therefore remand Robinson's claim to the ALJ for further consideration.

Robinson also asserts that we should instruct the ALJ to award benefits because any finding that his disability was not due to occupational pneumoconiosis would not be supported by substantial evidence in this record. We refuse to take that step until the ALJ has had the opportunity to review

the evidence under the correct legal standard.[1]

## I.

■ On June 23, 1973, Robinson filed his first claim for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901–945 ("the Act"). This claim was denied, and on March 31, 1983, he filed a new black lung claim with the Department of Labor ("the Department").[2] This claim moved through the administrative channels and was heard on the record by Administrative Law Judge Victor Chao on June 8, 1988. The only issues before the ALJ were whether Robinson had pneumoconiosis arising from his coal mine employment and whether he was totally disabled by pneumoconiosis.

On September 27, 1988, the ALJ issued a Decision and Order denying benefits. The ALJ found that Robinson had been a miner for approximately 35 years, ending on April 29, 1982. He analyzed the claim under the Department's eligibility criteria contained in 20 C.F.R. Part 718. These rules apply to claims filed after April 1, 1980. *See Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988) (summarizing the circuitous history of the Black Lung Benefits Act regulations).

■ Under Part 718, the miner must prove (1) that he has pneumoconiosis, (2) that the disease arose out of his coal mine employment, and (3) that he is totally disabled due to the disease. *See* 20 C.F.R. §§ 718.201–.204; *Director, OWCP v. Mangifest*, 826 F.2d 1318 (3d Cir.1987). The ALJ held that the x-ray evidence was suffi-cient to establish the existence of pneumoconiosis. He also concluded that Robinson was totally disabled. The central issue in this claim, as correctly identified by the ALJ, is whether the disability was due to the pneumoconiosis.[3]

The physicians who examined Robinson or reviewed his medical records did not agree on this issue. Dr. D.L. Rasmussen concluded that Robinson's disability was consistent with occupational pneumoconiosis. Dr. George Zaldivar's opinion was that Robinson's disability was the result of pulmonary fibrosis, which is not usually related to coal workers' pneumoconiosis. Dr. Peter G. Tuteur, who reviewed the entire medical record, concluded that the disability was caused by coal workers' pneumoconiosis or by pulmonary embolism, but that he could not conclusively diagnose the actual cause without further testing. Reviewing this evidence, the ALJ held that Robinson had failed to show by a preponderance of the evidence that his total disability was "in and of itself" caused by pneumoconiosis, and he therefore denied benefits.

Robinson also filed a motion before the ALJ to compel production of Dr. Zaldivar's financial records in order to determine what percentage of his income is derived from performing physical examinations for coal companies. Robinson claimed that such records would be evidence of Zaldivar's bias against black lung claimants. The ALJ denied this motion.

On appeal the Benefits Review Board affirmed the ALJ's opinion. The Board found that the judge's consideration of the

---

1. Robinson's final contention that the ALJ abused its discretion in not ordering the production of the financial records of one of the physicians who rendered a medical opinion in this case is utterly without merit.

2. The employer Pickands Mather requests that, on remand, the ALJ decide whether Robinson's second claim was barred by principles of res judicata. Because this argument was raised before the ALJ below and was not discussed in his opinion, we assume that the ALJ found that it was without merit and that the claim was not barred. Upon examining the record in this case, we agree that Robinson could bring another claim in 1983.

3. The employer's brief argues that Robinson never raised the issue of the appropriate causation legal standard before the BRB. If this were true, it would ordinarily constitute waiver. However, in this case all the parties admit that the BRB applied the incorrect standard, the parties briefed the issue, and they discussed it during oral argument. We will therefore relieve Robinson from the consequences of his lawyer's default and address this issue on its merits. *Cf. Shelton v. Director, OWCP*, 899 F.2d 690, 693 (7th Cir.1990).

evidence was proper and his findings were supported by substantial evidence. Robinson now appeals to this court.

## II.

■ To receive black lung benefits, a claimant must be "totally disabled *due to* pneumoconiosis." 30 U.S.C. § 901(a); 20 C.F.R. § 718.204(a), (c)(5) (emphasis added). However, neither the Black Lung Act itself nor the regulations specify the degree to which pneumoconiosis must be responsible for the disability in order to merit an award of benefits. *Cf.* 20 C.F.R. § 718.205(b), (c) ("due to pneumoconiosis" defined in context of survivors' claims). In the present case, the ALJ applied *Wilburn v. Director, OWCP*, 11 Black Lung Reporter (MB) 1–135 (BRB 1988), in finding that there was not the requisite causal relationship between the occupational pneumoconiosis and Robinson's total disability. In *Wilburn*, the BRB held that the disability causation requirement could be established only if the proof demonstrated that the miner's pneumoconiosis was "in and of itself" totally disabling. In other words, if a miner has pneumoconiosis and it contributes to some degree to a totally disabling lung impairment, or even if it contributed substantially, but was not totally disabling standing alone, benefits could not be awarded under Part 718.

Earlier this year, the BRB reversed *Wilburn* in an *en banc* decision. *Scott v. Mason Coal Co.*, No. 88–1838 BLA (BRB June 22, 1990). The Board rejected the "in and of itself" requirement and held instead that a "claimant must establish that his pneumoconiosis was a contributing cause of his totally disabling respiratory impairment." *Id.*, slip op. at 3–4. This court has not directly addressed this issue before the present case.[4]

Every circuit examining *Wilburn* has disagreed with its outcome, but they have not all articulated the same standard to be applied. The Third Circuit and Eleventh Circuit have held that the claimant must prove by a preponderance of the evidence that pneumoconiosis was a "substantial" contributing cause of the disability. *See Lollar v. Alabama By–Products Corp.*, 893 F.2d 1258, 1265 (11th Cir.1990); *Bonessa v. United States Steel Corp.*, 884 F.2d 726, 732–34 (3d Cir.1989). Both courts found support for this standard in the language of 20 C.F.R. § 205 which articulates the disability causation requirement for claims filed by survivors of deceased miners. Section 205(a)(5), applicable to claims filed before 1982, provides, "[d]eath shall be considered to be due to pneumoconiosis where the cause of death is *significantly related* to ... pneumoconiosis." (Emphasis added.) Section 205(c) states that "death will be considered to be due to pneumoconiosis if ... pneumoconiosis was a *substantially contributing cause* or factor leading to the miner's death...." (Emphasis added.)

The Sixth Circuit reached a slightly different result in *Adams v. Director, OWCP*, 886 F.2d 818, 825 (6th Cir.1989). The court concluded that the causation relationship between total disability and pneumoconiosis should be parallel to the relationship between pneumoconiosis and coal mine employment set forth in 20 C.F.R. § 718.203(a). It therefore held that a claimant "must affirmatively establish only that his totally disabling respiratory impairment (as found under section 718.-204(c)) was due 'at least in part' to his pneumoconiosis." *Id.* at 825; *cf.* 20 C.F.R. § 718.203(a) ("to be found eligible for benefits ... the miner's pneumoconiosis [must] ar[i]se at least in part out of coal mine employment".) Although it did not use the words "significant" or "substantial" in its

---

4. In *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir.1984), this court held that pneumoconiosis "need not be the exclusive causative factor rendering the claimant totally disabled in order to be compensable under the [interim presumptions scheme] of the Black Lung Act." In *Massey*, however, we were interpreting 20 C.F.R. § 727.203(b)(3) of the interim

regulations that apply to claims filed on or before March 31, 1980. Therefore, the *Massey* decision provides little guidance in addressing the issue raised in the present case. *But see Hawkins v. Director, OWCP*, 907 F.2d 697 (7th Cir.1990) (analogizing section 727.203(b)(3) with section 718.204).

standard, the court in *Adams* did observe that "[n]othing in this record suggests that Adams' pneumoconiosis played only an infinitesimal or de minim[i]s part of his totally disabling respiratory impairment, so we need not consider here whether such a finding would support a denial of benefits under the Act." *Id.* at 826 n. 11.

The Tenth Circuit, in *Mangus v. Director, OWCP*, 882 F.2d 1527 (10th Cir. 1989), explicitly rejected any requirement of "significant" or "substantial" causation. Following the same reason used by the Sixth Circuit in *Adams* and noting the remedial purpose of the Black Lung Benefits Act, the court held that "if the pneumoconiosis is at least *a contributing cause*, there is a sufficient nexus to satisfy claimant's burden of proof." *Id.* at 1531–32 (emphasis in original).

The Seventh Circuit has followed the *Mangus* decision in adopting a "contributing cause" standard. *See Hawkins v. Director, OWCP*, 907 F.2d 697 (7th Cir.1990). Another opinion from that same circuit has attempted to clarify what degree of relationship is necessary for pneumoconiosis to be deemed to be "contributing" to a total disability when numerous causes converge to impair the miner's health:

> [M]ining must be a necessary, but need not be a sufficient, condition of the miner's disability; if he had not mined, he would not have become totally disabled, although he might have avoided the disability by care on some other front, for example by not smoking.... A miner is not entitled to benefits if by reason of his heavy smoking or some other activity or condition of his that is not itself mining, he would have become totally disabled (and no later than he did) even if he had never gone near a coal mine.

*Shelton v. Director, OWCP*, 899 F.2d 690, 693 (7th Cir.1990).

After carefully reviewing all of these cases, we believe that, despite their use of different words, the standards expressed are practically the same in essence and in effect. There is no dispute that the hold-

ing in *Wilburn* that pneumoconiosis must be the "sole" or "direct" cause of the disability is too stringent and is not supported by the language and context of the regulations. Likewise, all of the circuits agree that a showing of some causal link is required. Section 204(c)(5), 20 C.F.R., is clear that

> [e]xcept as provided in 718.305, proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment ... shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis.

We conclude that the formulation of the disability causation requirement that is easiest to apply and is most consistent with the remedial purpose of the Act is simply "contributing cause." We agree with the courts in *Adams, Mangus,* and *Hawkins* that there is no reason for the causation requirement in 20 C.F.R. § 204 to differ from the nexus between pneumoconiosis and coal mine employment required by 20 C.F.R. § 203. We also find that the words "significant" or "substantial," while contributing little to the analysis of the causation requirement, could be used to reconstruct an unnecessarily high hurdle for claimants to clear, such as the one in *Wilburn*. Finally, our holding is also consistent with the BRB's most recent pronouncement on this issue in *Scott*. To be entitled to benefits, a claimant must prove by a preponderance of the evidence that his pneumoconiosis was at least a contributing cause of his totally disabling respiratory impairment.

To give further meaning to this standard, we also adopt the Seventh Circuit's explanation in *Shelton* that the claimant's coal mining must be a necessary condition of his disability. If the claimant would have been disabled to the same degree and by the same time in his life if he had never been a miner, then benefits should not be awarded. On the other hand, if his mining has contributed to his disability, then benefits are appropriate.[5]

---

5. Requiring the miner's pneumoconiosis to be a necessary condition of his disability should

eliminate the concern, alluded to in *Adams,* of claims in which "pneumoconiosis has played

Because the ALJ did not apply the more lenient standard articulated herein, we remand this case to the ALJ for further consideration of the evidence in light thereof.

### III.

It appears from the record that the ALJ relied heavily on the testimony of Dr. Zaldivar in finding that Robinson's disability was not caused by his pneumoconiosis. Zaldivar testified that Robinson suffers from non-occupational pulmonary fibrosis, and that this condition is not related to coal workers' pneumoconiosis. The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairment, arising out of coal mine employment." 30 U.S.C. § 902(b). The regulations elaborate:

> This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, *massive pulmonary fibrosis, progressive massive fibrosis*, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 218.201 (emphasis added). As explained in the case law, this broad definition "effectively allows for the compensation of miners suffering from a variety of respiratory problems that may bear a relationship to their employment in the coal mines." *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 938 (4th Cir.1980).

On remand, the ALJ should determine whether Zaldivar's medical opinion can support a finding that Robinson's disability did not "arise out of coal mine employment." If his opinion is not consistent with the broad legal definition of pneumoconiosis found in the regulations, and if the ALJ

finds that Robinson's disability was caused by his pneumoconiosis as defined above, then benefits should be awarded.

### IV.

For the reasons explained above, the decision of the Board is reversed and we remand Robinson's claim to the Administrative Law Judge to consider the evidence under the legal standards articulated herein.

REVERSED AND REMANDED.

---

only an infinitesimal or de minim[i]s part." *Adams*, 886 F.2d at 826 n. 11. This concern led the Eleventh Circuit to adopt the "substantial contributor" language of *Bonessa. See Lollar,* 893 F.2d at 1265.