28 F.3d 1209
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles CREECH, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 93-1878.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 3, 1994.
Decided June 9, 1994.
 
 On Petition for Review of an Order of the Benefits Review Board. (92-0838-BLA)
 Clifford M. Farrell, Manring & Farrell, Columbus, Ohio, for Petitioner.
 Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Richard A. Seid, Counsel for Administrative Litigation and Legal Advice, Rodger Pitcairn, United States Department of Labor, Washington, D.C., for respondent.
 Ben. Rev. Bd.
 REVERSED AND REMANDED.
 Before RUSSELL and WILLIAMS, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Charles Creech seeks review of the Benefits Review Board's (Board) decision affirming the administrative law judge's (ALJ) decision to deny his application for black lung benefits under 30 U.S.C. Sec. 901-45 (1988). On appeal, Creech and the Director, Office of Workers' Compensation Programs (Director), argue that the ALJ and Board erred by finding the evidence of record insufficient to establish pneumoconiosis. We agree, and will reverse the finding of no pneumoconiosis and remand for further consideration.
 
 
 2
 Initially, we note that because Creech had previously filed an application for benefits which was finally denied, the ALJ considered in connection with the claim under review whether Creech could establish a material change in conditions pursuant to 20 C.F.R. Sec. 725.309(d) (1993). The ALJ found that Creech failed to establish a material change in conditions, but the Board reversed this determination, finding the evidence submitted with Creech's second claim sufficient as a matter of law to establish a material change in conditions. While Creech interprets the Board's affirmance of the ALJ's finding of no pneumoconiosis together with its reversal of the ALJ's finding of no material change in conditions as an implicit ruling that Creech has established total disability, we agree with the Director that the Board's reversal on the material change issue does not equate to a finding that the claimant has proven any critical element of entitlement. Rather, its finding merely signifies that evidence developed since the prior denial could possibly change the prior result if credited. See Shupink v. LTV Steel Co., 17 BLR 1-24 (1992). Thus, contrary to Creech's belief, the Board's decision does not address the issue of total disability. Rather, it merely affirms the ALJ's finding of no pneumoconiosis without addressing any other issues.
 
 
 3
 We, however, reverse the findings of the Board and the ALJ that Creech failed to establish pneumoconiosis. The Director concedes on appeal that the evidence is sufficient to establish this critical element. See Daugherty v. Director, Office of Workers' Compensation Programs, 897 F.2d 740, 741, 743 (4th Cir.1990); Adams v. Director, Office of Workers' Compensation Programs, 886 F.2d 818, 819 n. 3 (6th Cir.1989). Moreover, we find that the ALJ committed errors in weighing the medical reports relevant to this issue.
 
 
 4
 The ALJ rejected the view that Dr. Knight's opinion attributing the miner's lung disease to smoking and dust exposure "at work" established that the miner's coal dust exposure contributed to his lung disease. Creech also worked at an aluminum plant, where he was exposed to hazardous inhalants, including asbestos, chlorine gas, and aluminum ore. The ALJ found that since Dr. Knight's report specifically delineated the hazardous inhalants to which Creech was exposed at the aluminum plant but failed to delineate any harmful irritants associated with his coal mine employment, his report's reference to harmful exposure "at work" only extended to work at the aluminum plant.
 
 
 5
 Our review of Dr. Knight's report, however, discloses that the ALJ's interpretation was erroneous. The report was prepared on a standardized Department of Labor form, which requests the physician to list the claimant's coal mine employment and non-coal mine employment in separate blocks. The block for non-coal mine employment requests the physician to specifically list any toxic inhalants to which a claimant was exposed at his non-coal mine jobs, but the block for coal mining jobs makes no request that harmful irritants be delineated. It was therefore unreasonable for the ALJ to infer from the fact that Dr. Knight did not list any toxic inhalants in the coal mine employment section of his report that the physician's reference to "work" later in his report did not include his coal mine employment, but only his employment at the aluminum plant.
 
 
 6
 We also note that the ALJ did not employ the correct legal standard in weighing the report of Dr. Zochowski, who attributed Creech's emphysema to a combination of his exposures to coal dust during coal mining and to aluminum ore at the aluminum plant, but primarily due to his coal dust exposure. The ALJ rejected his finding that Creech's lung disease was "primarily" attributable to coal dust exposure, since the doctor did not adequately explain this apportionment in light of the fact that Creech worked for only seven years in the coal industry and for thirty years at the aluminum plant. It is not necessary, however, that coal dust exposure be the "primary" cause of a miner's lung disease. Rather, the miner establishes pneumoconiosis under 20 C.F.R. Sec. 718.201 (1993) by showing that coal mine employment significantly contributed to or substantially aggravated his lung disease. See Hobbs v. Clinchfield Coal Co., 917 F.2d 790, 791 n. 1 (4th Cir.1990).
 
 
 7
 Both the reports of Drs. Knight and Zochowski link the miner's lung disease at least in significant part to his coal mine employment, and the record contains no medical opinion which found that coal mine employment did not contribute to the miner's lung disease. Moreover, there is no merit to the Board's finding that the ALJ could properly refuse to credit the reports linking the miner's lung disease to his coal mining employment because these reports failed to consider the miner's subsequent exposure to dusty environments in other occupations. The reports of Drs. Knight and Zochowski clearly consider the miner's overall employment history and attribute his lung disease to a combination of coal mine and non-coal mine employment.
 
 
 8
 The Board's affirmance of the ALJ's finding of no pneumoconiosis is therefore reversed. Moreover, we also accept the Director's concession that a showing of legal pneumoconiosis underSec. 718.201 effectively establishes that pneumoconiosis arose out of coal mine employment under 20 C.F.R. Sec. 718.203 (1993). Id. at 791. Neither the Board nor the ALJ, however, have yet addressed whether the evidence of record establishes total disability due to pneumoconiosis, and the record contains conflicting evidence concerning these issues. We therefore remand this claim to the Board for further remand to the ALJ for consideration of these issues. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 REVERSED AND REMANDED